IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| ISMAEL RINCON | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 5:23-cv-00017 |
| CARLOS IBARRA, in his | § | |
| individual and official capacities, | § | |
| GERARDO JALOMO, in his | § | |
| individual and official capacities, | § | |
| ROBERTO MIRELES, JR., in his | § | |
| official and individual capacities, | § | |
| and CITY OF LAREDO, TEXAS | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT UNDER RULES 12(b)(4), 12(b)(5), and 12(b)(6)

TO THE HONORABLE DISTRICT JUDGE SALDANA ANDMAGISTRATE JUDGE QUIROGA:

NOW COMES Defendants the City of Laredo (City), Officer Carlos Ibarra (Ibarra), Officer Gerardo Jalomo (Jalomo), and Officer Roberto Mireles, Jr. (Mireles),[1] file this Motion to Dismiss Plaintiff's Complaint [ECF Doc. No. 1] pursuant to Federal Rules of Civil Procedure 12(b)(4), (b)(5) and 12(b)(6). The Defendants move the Court for dismissal of Plaintiff's federal law claims alleged against the Defendants in Plaintiff's Complaint on the grounds that it appears from the face of the pleadings that Defendants are entitled to judgment dismissing all of Plaintiff's claims against them as a matter of law. Defendants will respectfully show this Honorable Court as follows:

---

[1] The officers will be referred to as the Officers or the individual Officers. All defendants will be collectively referred to as Defendants or as City Defendants. Additionally, Officer Mireles as of this date, has not been served by Plaintiff. His inclusion in this brief should not be considered an appearance or waiving the requirement that he receive service.

*Defendants' Motion to Dismiss Plaintiff's Original Complaint*
*Pursuant to Rules 12(b)(4), 12(b)(5) and 12(b)(6)*                                                                         Page 1

## I. SUMMARY

1.      This case concerns Plaintiff Ismael Rincon's interaction with Laredo police officers after he was questioned and arrested for violating the City of Laredo Public Health Emergency Order establishing a curfew. Plaintiff Ismael Rincon filed his Complaint under Title 42, United States Code, Section 1983 (section 1983), alleging Defendants violated his civil rights protected by the Fourth Amendment to the United States Constitution [Dkt. 1, at 8-9]. Plaintiff was detained and later arrested by Ibarra and Jalomo for unlawful carrying of a weapon [Dkt. 1-3] and issued a citation for the curfew violation and failure to provide identification [Dkt. 1-7].

2.      According to the Complaint, Defendants unlawfully searched and seized his vehicle without probable cause and engaged in malicious prosecution. [Dkt. 1, at 8-9].

## II. CLAIMS ASSERTED

3.      Plaintiff asserted the following claims against the Officers in their individual and official capacities:

   (a)   a section 1983 claim alleging a violation of the Fourth Amendment to the United States Constitution asserting the Officers unlawfully seized Plaintiff and his personal property [Dkt. 1, at 8, ¶¶ 23-26]; and

   (b)   a section 1983 claim alleging a violation of the Fourth Amendment to the United States Constitution asserting the Officers unlawfully seized Plaintiff and his personal property [Dkt. 1, at 8-9, ¶¶ 27-30]; and

   (c)   a section 1983 claim alleging a violation of the Fourth Amendment to the United States Constitution asserting the Officers initiated a malicious prosecution against Plaintiff [Dkt. 1, at 9, ¶¶ 31-33]; and

   (d)   a section 1983 claim alleging a violation of the Fourth Amendment to the United States Constitution asserting a *Monell* claim against the City for failure to properly train and supervise [Dkt. 1, at 10, ¶¶ 34-35].

4. Plaintiff seeks punitive damages, attorney's fees, and a court order requiring the City of Laredo to provide proper constitutional training regarding to its officers. [Dkt. 1, at 11-12, V.a.-e.].

### III. STATEMENT OF FACTS

5. In 2020, cases of COVID-19 began spreading through the United States. [Dkt. 1-2, at 1]. On March 25, 2020, a public health disaster for all counties in the State of Texas was issued by Commissioner of the Texas Department of State Health Services recognizing that COVID-19 "poses a high risk of death to a large number of people, creates a substantial risk of public exposure because of the disease's method of transmission, and evidence that there is community spread." *Id.*

6. As of February 1, 2021, the City of Laredo had 40,162 residents test positive for COVID-19, with 632 virus-related deaths. *Id.* Further, due to the City's proximity to Mexico, the Local Health Authority identified a substantial level of community transmission and suggested an aggressive approach to mitigate the local spread of the virus. *Id.* at 1-2. Accordingly, on February 1, 2021, the City of Laredo adopted its amended Public Health Emergency Order (the Order), which was effective from February 1 to February 9, 2021. *Id*. at 2.

7. The Order imposed two levels of curfew. *Id.* at 16. First, between the hours of 10:00 PM and 5:00 AM for all social activities not occurring at an essential or non-essential business. *Id.* Additionally, the weekends of February 5 to February 8 and February 12 to February 15, 2021, the curfew was expanded to the hours of 6:00 PM to 5:00 AM. *Id.* The order defined "social activity" as "congregating in any area outside of an individual's household other than for engaging and seeking the services of essential or non-essential businesses." *Id*.

8.  The Order provided penalty and enforcement provisions for violations. First, failure to comply with the Order was declared an imminent threat to public health that constitutes a misdemeanor offense punishable by fine or other pecuniary penalties. *Id.* at 22. Additionally, any peace officer was granted lawful authority to enforce the provisions of the Order. *Id.* at 23.

9.  On or about February 6, 2021, at 1:29 AM, nearly eight hours after the curfew began, Plaintiff parked his vehicle in a private parking lot. [Dkt. 1-3]. Officers Ibarra and Jolomo approached Plaintiff to conduct a suspicious vehicle stop. *Id.* When Ibarra reached Plaintiffs vehicle, he observed several long rifles in the back seat, a rifle on Plaintiff's right side pointing toward the roof, and a green handgun in the cup holder. *Id.* Plaintiff was asked to exit the vehicle for officer safety. *Id.* Plaintiff refused to answer Officer's questions regarding why he was violating curfew, refused to provide identification, and initially refused to exit the vehicle to allow officers to conduct a pat down and search for additional weapons. *Id.* After his eventual exit, an additional weapon, which was later determined to be a BB-gun, was located on Plaintiff's person. *Id.* Officers conducted a vehicle search and located three handguns, three rifles, and two air soft guns. *Id*. Because Plaintiff did not possess a handgun license, he was arrested for unlawful possession of a weapon and cited for curfew violations and failure to provide identification. *Id.*

Plaintiff filed his complaint on February 6, 2023, exactly two years later.

### IV. ARGUMENT AND AUTHORITIES

**A.  Rule 12(b)(5) Standard**

10. "A party may raise insufficient process or insufficient service of process by moving to dismiss under Rules 12(b)(4) or 12(b)(5)." *Crittendon v. Texas Dep't of Health & Human Servs.*, No. H-19-1624, 2019 WL 5927261, at *2 (S.D. Tex. Nov. 12, 2019). A motion to dismiss under Rule 12(b)(5) "challenges the mode of delivery or the lack of delivery of the summons and

complaint." *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (internal quotation omitted). When service of process is challenged, the serving party bears the burden of proving its validity. *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

**B.     Rule 12(b)(6) Standard**

11.     If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. *See* FED R. CIV. P 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 209 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss under Rule l2 (b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191,205 (5th Cir. 2007)).

12.     Dismissal is proper if there is either (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Scott v. Steinhagen Oil Co., Inc.*, 224 F. Supp. 2d 1084, 1085 (E.D. Tex. 2002); accord *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp.2d 734, 737-38 (S.D. Tex. 1998); *Morrow v. Bank of Am., N.A.*, No. 5:12-CV-00782-

OLG, 2013 WL 12131235, at *1 (W.D. Tex. June 10, 2013). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) dismissal motion, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Rogers v. Raycom Media, Inc.*, 628 F. App'x 324 (5th Cir.), cert. denied, 137 S. Ct. 189, 196 L. Ed. 2d 127 (2016). As explained herein, Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A court need not "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir.1996)).

**C.     Motion to Dismiss for Lack of Service of Process**

13.     Plaintiff filed his complaint on February 6, 2023, the day the statute of limitations for his claims expired. Plaintiff then waited until May 5, 2023, eighty-eight days after filing his complaint, to serve Defendants Ibarra, Jalomo, and the City of Laredo. *See* Fed R. Civ. P. 4(m) (requiring a defendant to be served within 90 days after the complaint is filed). [Dkt. 3-5]. To date, Plaintiff has not served Defendant Mireles, Jr. Based on Plaintiff's failure to comply with Rule 4 and his pattern of delay in advancing his claims, Plainitff's claims against Officer Mireles should be dismissed for lack of process.

**D. Claims Against Individual Officers are Barred by Qualified Immunity**

14. The complaint against the Officers are that they violated Plaintiff's Fourth Amendment rights based on the Officers' alleged unlawful search and seizure of his person and his property. Plaintiff's underlying substantive claims are addressed below, but before Plaintiff can prevail on his claims, he must first overcome the Officers' qualified immunity defense.

15. As governmental employees at the time of the incident, the individual Officers are entitled to qualified immunity from suit available to governmental officials sued in their individual capacities under section 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects an official whose conduct was objectively reasonable even if the conduct infringed upon a constitutional right of the plaintiff. *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Qualified immunity is an immunity from suit, not just from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

16. Qualified immunity focuses on what the officer reasonably understood his powers and responsibilities to be at the time he acted. *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (noting that the actual circumstances may not justify the officer's behavior, but he is entitled to immunity if the facts as they appeared to the officer would make the conduct reasonable). The purpose of the qualified immunity inquiry is to recognize that officers can make reasonable mistakes as to how a legal doctrine will apply. *Saucier v. Katz*, 533 U.S. 194, 197 (2001). In fact, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

17. The qualified immunity analysis involves a two-part test. A court must determine whether the Plaintiff has alleged a violation of a "clearly established" constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *accord Saucier v. Katz*, 533 U.S. 194, 201 (2001). A

right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 482 U.S. 635, 640 (1987). In other words, the relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

18. In addition to finding a violation of a clearly established right, a defendant is nonetheless entitled to immunity if "[his] conduct was objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 573; *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

19. Importantly, Plaintiff has the burden of demonstrating the inapplicability of the qualified immunity defense by negating <u>both</u> prongs. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Plaintiff cannot establish a violation of a clearly established right. Furthermore, even if Plaintiff could establish such a violation, qualified immunity protects the Officers, as their conduct was objectively reasonable in light of the circumstances presented.

   *1. Plaintiff failed to allege a Fourth Amendment violation for unreasonable search and seizure.*

20. Plaintiff alleges two causes based on perceived Fourth Amendment violations. First, that the Officers unlawfully enforced a curfew order against him. Second, that there was no probable cause to search Plaintiff's car or seize his property. Both claims fail.

   *a. Officers had probable cause to stop and arrest Plaintiff.*

21. Plaintiff claims that the Officers unlawfully arrested him for violation of the curfew order is not a constitutional violation that waives qualified immunity. Plaintiff interprets this claim as a warrantless arrest without probable cause, however, Plaintiff's own pleadings establish the Officers had probable cause both to initiate the stop and subsequently arrest Plaintiff.

22. The Fourth Amendment protects against unreasonable searches and seizures. Warrantless arrests are not per se violations of the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 323, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001). "A law enforcement officer can make a warrantless arrest only if a federal or state law imbues him with that authority." *United States v. Sealed Juvenile 1*, 255 F.3d 213, 216 (5th Cir. 2001).

23. Additionally, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)); *see also Levine*, 80 F.3d at 132 ("The presence of probable cause is a mixed question of fact and law."). "[I]f a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

24. Here, Officers had probable cause to stop Plaintiff and authority for his arrest. Plaintiff was traveling in the City of Laredo at approximately 1:29 AM, nearly eight hours after the health-related curfew had gone into effect. Plaintiff pulled his vehicle into an abandoned parking lot and parked. Due to the hour and curfew violation, Officers approached Plaintiff to conduct a suspicious vehicle search. [Dkt. 1-1, at 0:20 – 0:33; Dkt 1-3]. Plaintiff refused to provide a reason for

violating the curfew and refused to identify himself. [Dkt. 1-1 at 1:47; Dkt 1-3]. After seeing the numerous weapons in the vehicle, Ibarra demanded Plaintiff exit the vehicle for the Officers' safety. [Dkt. 1-3]. The circumstances of the interaction were reasonable for Officer Ibarra to conclude Plaintiff was in violation of the curfew order.

25. Further, the curfew order and state law authorized the Officers to arrest Plaintiff. The emergency order specifically makes violations of the order a penalty "subject to misdemeanor offense." [Dkt. 1-2 at p. 22]. Further, in enforcing such a disaster declaration, the Texas Disaster Act of 1975 allows for the confinement in jail for a term of up to 180 days. Tex. Gov't Code § 418.173. Plaintiff was eventually cited for violation of the curfew ordinance and failure to identify [Dkt. 1-7] and arrested for unlawfully carrying of a handgun in violation of Texas Penal Code section 46.02. [Dkt. 1-3].

26. Plaintiff has failed to allege any conduct of the Officers that was not supported by probable cause. He has failed to identify a warrantless arrest that was unauthorized by state law. And failed to allege any facts that demonstrate the Officers acted unreasonably in light of the situation he created.

### b. *Officers legally seized Plaintiff's property.*

27. Plaintiff's second Fourth Amendment allegation claims that the Officers unlawfully searched and seized his personal property. As discussed above, the Officers had probable cause to stop and question Plaintiff as to his presence a vacant parking lot in violation of the curfew order. Plaintiff was subsequently detained for that violation and for failure to identify himself.

28. During the interaction, Officer were able to see numerous weapons in Plaintiff's vehicle. [Dkt. 1-1, at 2:30, 3:15,10:18; Dkt. 1-3]. The Officers conducted an inventory search, of which Plaintiff complains.

29. "An inventory search may be 'reasonable' under the Fourth Amendment even though it is not conducted pursuant to a warrant or based upon probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987). "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* The court affords deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Id.*

30. Plaintiff's claims against the Officers for unlawful search and seizure under the Fourth Amendment must fail. Plaintiff has failed to allege any facts that support an allegation that there was no probable cause to detain Plaintiff and conduct an investigatory stop. Once Plaintiff was placed under arrest, it would be unsafe to leave his vehicle in the abandoned parking lot filled with weapons. [Dkt. 1-1, at 10:18]. Therefore, it was not only reasonable, but necessary, for the Officers to search and seize the weapons located in the vehicle for both the Officers' safety and the safety of the public. Because these actions are objectively reasonable based on the circumstances, claims of unreasonable seizure against the Officers should be dismissed.

   *2.  Malicious prosecution is not a constitutional violation.*

31. In his third cause of action, Plaintiff alleges that Ibarra and Jalomo initiated malicious prosecution against him for his refusal to answer his questions or provide identification. [Dkt. 1, p. 9, ¶¶ 31-33]. Recently, the Fifth Circuit determined that the elements of a Fourth Amendment malicious prosecution claim included "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.4th 262, 2023 WL 2005263, at *11 (5th Cir. 2023). In addition to these elements, plaintiffs asserting a

Fourth Amendment malicious prosecution claim under section 1983 must prove the threshold element of an unlawful Fourth Amendment seizure. *Id.*

32. Plaintiff's claim fails on the threshold element that the seizure was a product of legal process. *Kato v. Wallace*, 549 U.S. 384, 390, 127 S. Ct. 1091, 1096 (2007) (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"). Plaintiff has alleged that he was the subject of a wrongful warrantless arrest. Accordingly, the "arrest itself does not provide the requisite legal process for his malicious prosecution claim." *Oliveria v. City of Jersey Vill.*, No. 4:21-CV-03564, 2023 U.S. Dist. LEXIS 51257, at *18 (S.D. Tex. Mar. 27, 2023) (allegations that the officers without just or reasonable cause or warrant seized plaintiff did not provide requisite legal process for malicious prosecution). Because Plaintiff has failed to allege he was seized pursuant to legal process, his claim for malicious prosecution must be dismissed.

**E.     Municipal Liability Not Sufficiently Alleged**

33. Independently, assuming Plaintiff could survive the individual Officers' qualified immunity defenses, Plaintiff's allegations against the City do not meet the requisite standard to impose section 1983 municipal liability. Municipal liability under section 1983 must be premised on a municipal policy or custom that caused the alleged constitutional deprivation. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). "[I]t is clear that a municipality may not be held liable under Section 1983 on the basis of respondeat superior." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 308-309 (5th Cir. 2004) (citing *Monell v. Dept. of Soc. Servs*, 436 U.S. 658 (1978)). The Fifth Circuit has stated that "[a] municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort*

*Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

34. For purposes of Section 1983 liability, a "policy" must be officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge v. St Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). "[O]nly those municipal officers who have 'final policymaking authority' may by their actions subject the government to Section 1983 liability." *City of St Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988). "[A] direct causal connection must exist between the policy and the alleged constitutional deprivation. This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (emphasis added in *Deep East Texas*).

35. In the Fifth Circuit, "a single incident is usually insufficient to demonstrate deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005). Likewise, the prior instances alleged must be similar to the deprivation alleged by the plaintiff seeking recovery. *Id.* The Court in *Estate of Davis* explained as follows:

> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. **While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party.**

*Id.* at 383 (internal citations omitted) (emphasis added).

36. The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. To state a claim under a failure to train or supervise theory, a plaintiff must plead: (1) the defendant failed to supervise or train the alleged bad actor(s), (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). "Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).

37. Plaintiff has raised conclusory allegations of failure to train against the City. Plaintiff failed to allege "either (1) that a policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that a policy was adopted or maintained by the municipality's policymakers 'with 'deliberate indifference' as to its known or obvious consequences . . . a showing of simple or even heightened negligence will not suffice.'" *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997). Plaintiff has also failed to point to any actual inadequacies, defective training, or pattern of constitutional violations that have occurred based on the Officers' training. *City of Canton v. Harris*, 489 U.S. at 390. Accordingly, Plaintiff's failure to train claim must be dismissed.

## V. CONCLUSION AND PRAYER

**WHEREFORE PREMISES CONSIDERED**, City Defendants pray that the Court grant this motion, and that Plaintiff's claims, in their entirety, be dismissed with prejudice; that Final Judgment be entered disposing of this case; or such partial relief as the Court deems; and for such other and further relief, in equity or in law, to which they may show themselves justly entitled.

Respectfully submitted,

William M. McKamie
Texas Bar No. 13686800
Southern Dist. I.D. No. 13010
Email: mmckamie@toase.com

_____
Fredrick "Fritz" Quast
Texas Bar No. 24032974
Southern Dist. I.D. No. 3327433
Email: fquast@toase.com

Alicia K. Kreh
Texas Bar No. 24097953
Southern Dist. I.D. No. 3327420
Email: akreh@toase.com

**Taylor, Olson, Adkins,
Sralla & Elam, L.L.P.**
6000 Western Place, Suite 200
Fort Worth, Texas 76107
Telephone No. (817) 332-2580
Facsimile No. (817) 332-4740

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      On May 26, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case file system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

**Pro Se Plaintiff:**
Ismael Rincon
1102 S. Meadow
Laredo, Texas 78043
(210)729-9991
Email: ismarincon@hotmail.com

                                                                                                 Fredrick "Fritz" Quast